UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 17-CR-10045 |
| | ) |
| THOMAS COLEMAN, | ) |
| | ) |
| Defendant. | ) |

### ORDER AND OPINION

Now before the Court is Defendant Thomas Coleman's Motion for Compassionate Release (ECF No. 30) and Amended Motion for Compassionate Release ("Amended Motion"). ECF No. 34. For the reasons stated below, Defendant's Motions are DENIED.

### Background

Defendant is serving a 41-month sentence in the Federal Bureau of Prisons ("BOP"). The Government states that Defendant's projected release date is August 1, 2022 while Defendant argues that the BOP website indicates it is March 9, 2022. Regardless, Defendant has at least nine months left on his sentence.

Defendant was involved in a three-year long scheme to defraud financial institutions. ECF No. 19. He submitted fraudulent applications to obtain loans and open credit card, savings, and checking accounts from local financial institutions and other banks. He falsified W-2s which grossly overstated his salary to open the accounts and obtain the loans. He then filed identity theft complaints with the Federal Trade Commission and credit bureaus to falsely claim he was a victim of identity theft. *Id*. Accordingly, when financial institutions checked his credit, the unfavorable information was suppressed,

1

including loans on vehicles which were already encumbered by loans. He then obtained and attempted to obtain multiple loans using the same vehicles as collateral. *Id*. As a result of this scheme to defraud, financial institutions lost approximately $333,000 and Defendant attempted to defraud them out of over a million dollars.

Defendant argues that he is at a heightened risk for a severe infection of COVID-19, has served the majority of his sentence, and has been a model prisoner, which he argues should qualify him for early release.

## **Legal Standard**

Before filing a motion for compassionate release, a defendant is required to first request that the BOP file a motion on his behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant a motion only if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after thirty days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

The compassionate release statute directs the Court to make three considerations: (1) whether extraordinary and compelling reasons warrant a sentence reduction; (2) whether a reduction is consistent with the factors listed in 18 U.S.C. § 3553(a); and (3) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1). The Sentencing Commission, however, has not updated its policy statements since the First Step Act came into effect. Prior to the passage of the First Step Act, federal judges were only able to release prisoners for compassionate release reasons upon motion by the BOP. *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The First Step Act gave judges the power to grant

compassionate release on a prisoner's own motion provided that the prisoner first allowed the BOP to review the request and make a recommendation or thirty days had passed since the prisoner submitted his or her request to the BOP. *Id*. In *Gunn*, the Seventh Circuit determined that the most recent policy statements from the Sentencing Commission do not apply to prisoner-initiated motions because the guidelines only address those motions that were brought pursuant to a BOP motion. *Id*. at 1180. Accordingly, the Seventh Circuit held that "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement." *Id*. This Court is therefore not bound by the Sentencing Commission's analysis in § 1B1.13 or the application notes regarding the definition of "extraordinary and compelling reasons." *Id*. at 1181.

Despite the Seventh Circuit clarifying that courts are not bound by the Sentencing Commission's guidelines regarding compassionate release when an inmate brings the motion, the Seventh Circuit strongly suggested that those guidelines are still relevant to district courts' decisions. The Seventh Circuit explained that the guidelines provide a "working definition of 'extraordinary and compelling reasons'" and cautioned that a judge who "strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id*. at 1180. "In this way the Commission's analysis can guide discretion without being conclusive." *Id*. The Seventh Circuit further stated that it would "expect" district judges to give the BOP Director's analysis regarding the prisoner's request "substantial weight, even though under the First Step Act the Director's views are not controlling." *Id*. Based on the available guidance from the Seventh Circuit, this Court will give great weight to the Sentencing Guidelines regarding motions for compassionate

3

release even though they are not binding in this case. Finally, this Court is disinclined to grant a sentence reduction unless it determines that a defendant "is not a danger to the safety of any other person or to the community." *See* USSG § 1B1.13(2).

## Discussion

Defendant claims that he exhausted his administrative remedies before filing a motion for compassionate release, and the Government does not disagree. Accordingly, the Court will address the merits of this motion.

### I. Eligibility for Compassionate Release

Defendant is forty-six years old and his BMI qualifies him as obese. The CDC recognizes obesity as a factor that might present an increased risk of severe illness from the virus. *See People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 3, 2021).

The parties disagree about whether Defendant has additional health risk factors, but in its supplemental brief, the Government appears to concede that Defendant might be able to present an extraordinary risk of severe illness. ECF No. 41. However, there are currently no inmates or staff members with active infections, out of the 758 inmates housed at FCI Safford. *COVID-19 Coronavirus*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited June 3, 2021). There are also now 306 inmates, and 97 staff members that are fully inoculated. *Id*. The facility appears to have maintained its status of inmates being virus free since the Government filed its response brief in March, and there are now no infected staff members. With a significant portion of the inmate population vaccinated and no new cases for a few months, it appears that the

4

pandemic issues have largely been eradicated at Defendant's facility. Defendant also does not present sufficient evidence that FCI Safford is not effectively mitigating the spread of COVID-19 nor is there evidence to suggest that the facility is unable or unwilling to provide Defendant medical care. Accordingly, the Court finds that Defendant has failed to establish "extraordinary and compelling" reasons for purposes of compassionate release given that his facility has been free of COVID for some time, there is a high number of fully vaccinated inmates, and COVID numbers nationwide have been on a significant downward trajectory over the last several months.

## II.     Applicable § 3553(a) Factors Do Not Support a Sentence Reduction

Defendant argues that the § 3553(a) factors weigh in favor of compassionate release because he committed a non-violent offense with no mandatory minimum and will be eligible to be released to a halfway house in a matter of months. He explains that he has not incurred any disciplinary infraction and is at a low risk to reoffend. Defendant further argues that he has spent a sufficient amount of time in prison to provide the necessary general and specific deterrence. He argues that a few months early release will not create an unwarranted sentencing disparity between him and other offenders. Defendant further argues that he is not a danger to the community and will still have a 5-year supervised release term to serve even if he is released early.

Prior to the current conviction, however, Defendant was engaged in several crimes of dishonesty, among other crimes. ECF No. 19. He had convictions for filing a false police report; concealment/altering the price of merchandise; criminal possession of a forgery document; disorderly conduct and assault; aggravated harassment when he spray painted a car and garage door which violated an order of protection his ex-girlfriend had against

him; and failing to return a rental car. ECF No. 19 at 8–9. Th continuity of his criminal history remains concerning to the Court.

The underlying offense was also serious. Defendant engaged in a sophisticated fraud over the course of several years, successfully stealing $333,000 from ten financial institutions with an intended theft of over one million dollars. He submitted fraudulent loan applications and falsified W-2s and earning statements. He also filed identity theft complaints with the Federal Trade Commission and credit bureaus falsely claiming he was a victim of identity theft. Thus, engaging the Federal government to help in concealing his crimes. As a result of filing of these false complaints, unfavorable information was suppressed when financial institutions ran his credit report, permitting him to obtain additional fraudulent loans. He spent these loans on luxury items including a Corvette Stingray, a Porsche Panamera, and a Mercedes.

Defendant has engaged in a variety of criminal acts and was engaged in the present fraudulent scheme over the course of many years. Therefore, even if Defendant had successfully demonstrated extraordinary and compelling reasons for a reduced sentence, this Court finds that a reduction would be unwarranted under § 3553(a) factors because it would depreciate the seriousness of his offense and fail to provide just punishment.

### III.   Rehabilitative efforts

Defendant also argues that he is in a minimum-security facility and has not had any disciplinary issues. He further cites that he has participated in numerous education opportunities while incarcerated. This Court commends Defendant for his good conduct, but rehabilitation alone does not constitute an extraordinary and compelling reason for a sentence reduction. Congress directed the Sentencing Commission to adopt policy

statements regarding "the appropriate use of . . . the sentence modification provisions set forth in section[] . . . 3582(c) of title 18." 28 U.S.C. § 994(a)(2)(C). Providing further guidance, § 994(t) states:

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

This Court finds that none of Defendant's proffered reasons regarding his good conduct are "extraordinary and compelling" under § 3582(c)(1)(A)(i).

## Conclusion

For the reasons stated above, Defendant's Second Amended Motion for Compassionate Release [34] and his *pro se* Motion [30] are DENIED.

ENTERED this 4th day of June, 2021.

s/ Michael M. Mihm
Michael M. Mihm
United States District Court Judge
